UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WILLIAM ATKINS, N-52198, ) | |
| ) | |
| Petitioner, ) | Case No. 1:18-cv-07559 |
| ) | |
| v. ) | Judge Sharon Johnson Coleman |
| ) | |
| ANTHONY WILLS,[1] ) | |
| ) | |
| Respondent. ) | |

**MEMORANDUM OPINION AND ORDER**

Petitioner William Atkins brings his petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his petition, initially filed pro se and represented on reply, Petitioner petitions the Court to vacate his conviction of the January 1981 murder of Elvio Mercuri, for which he was sentenced to life imprisonment in January 2009. Because Petitioner's habeas petition is untimely and equitable tolling is inapplicable, Petitioner's habeas petition is dismissed as untimely.

**Background**

Unless otherwise noted, the following facts are drawn from the state appellate court opinion on direct review following Atkin's second trial, *People v. Atkins*, 2011 IL App (1st) 090740-U, available at Dkt. 19, Ex. A. *See Thompkins v. Pfister,* 698 F.3d 976, 983 (7th Cir. 2012) ("The state court's factual determinations are entitled to a presumption of correctness, and the petitioner has the burden of overcoming this presumption by clear and convincing evidence."). Because Petitioner's habeas petition is untimely, the Court focuses on the procedural background of the petition.

---

[1] Respondent Jacqueline Lashbrook is no longer the Warden at Menard Correctional Center. The Court substitutes the current Warden, Anthony Wills, as respondent. *See* Fed. R. Civ. P. 25(d).

*A. Trial and direct appeal*

In 2003, Petitioner and his codefendant, Ivory Lloyd, were charged with the 1981 murder of Elvio Mercuri. As set forth in the state court proceedings, at 1:30am on January 4, 1981, Mercuri and his girlfriend T.C. were parked in front of T.C.'s home after finishing a date. Petitioner and Lloyd, who was armed with a pistol, forced their way into Mercuri's car, struck Mercuri in the face, pushed Mercuri into the backseat of the car, and drove away. Petitioner drove the car while Lloyd proceeded to rape T.C. At one point, the car stopped, and Petitioner and Lloyd pulled Mercuri from the back seat and threw him the trunk of the car. Mercuri was then shot once in the neck, killing him. Petitioner and Lloyd then returned to the car, this time with Lloyd driving while Atkins raped T.C. After driving further, Petitioner and Lloyd left the car, which allowed T.C. to drive away and get help.

In 2009, following a jury trial, Petitioner was found guilty of murder and sentenced to life imprisonment. On direct appeal, Petitioner argued that his trial counsel provided ineffective assistance by failing to request a *Frye* hearing before the admission of fingerprint evidence. *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923). The appellate court affirmed his conviction, finding that Petitioner could not establish any prejudice in support of his claim that the failure to request a *Frye* hearing amounted to ineffective assistance of counsel. The judgment of the appellate court was entered on October 11, 2011. Petitioner then filed a petition for leave to appeal (PLA) to the Illinois Supreme Court, which denied that appeal on January 25, 2012.

*B. Postconviction investigation*

Before the appellate court affirmed the judgment of the trial court, Petitioner and his family began preparing for the possibility of filing postconviction motions. Petitioner alleges that on March 3, 2011, his brother, Toby Gross, paid his attorney, Herb Goldberg, to file his postconviction motions

2

by October 23, 2012. (Dkt. 3.)[2] In the interim, Petitioner drafted a pro se postconviction motion. (Dkt. 3, Ex. C.) In May 2012, Petitioner states that he was coordinating with another attorney to file his pro se postconviction motion pro bono when Gross told him that Goldberg would file a postconviction motion on his behalf. *Id.* Gross then called the pro bono attorney and told her that they would no longer require her assistance. *Id.*

Up to and after the October 23 deadline passed without Goldberg filing his motion, Petitioner states that he tried "numerous times" to contact Goldberg. (Dkt. 3.) When he was able to contact Goldberg, Goldberg advised Petitioner that "he'd be filing an actual innocence claim on Petitioner's behalf and further stated that there was no time limit on [an] actual innocence claim." *Id.* As such, Petitioner claims that he "had no other recourse except to wait on Attorney Goldberg to file an actual innocence claim in which he was supposed to challenge his alleged confession." *Id.* Still, on October 31, 2012, Petitioner filed a motion in the Cook County Circuit Court for an extension of time to file his postconviction petitions. (Dkt. 3, Ex. C.) This motion was denied by the Court on November 6, 2012. (Dkt. 3, Ex. D.)

After his motion for an extension was denied, Petitioner does not say whether he took action to file his postconviction motion pro se before the statutory deadline, which was April 24, 2013. Petitioner did, however, file a complaint against Goldberg to the Illinois Attorney Registration and Disciplinary Commission (ARDC) for failing to file his postconviction motion.

Goldberg's response to the ARDC's investigation tells a different story than Petitioner's narrative. In his letter, Goldberg states that in May 2011, he was paid by Gross to conduct a review

---

[2] On November 14, 2018, Petitioner filed his writ of petition for habeas corpus. (Dkt. 1.) At that time, Petitioner also filed a pro se motion to stay the proceedings during the pendency of his actual innocence petition and to allow equitable tolling of his petition. (Dkt. 3.) While the Court denied this motion for being premature and duplicative of Petitioner's habeas petition, the motion included several unlabeled attachments relevant to Petitioner's habeas petition. The Court refers to these attachments as follows: Exhibit A—Receipts of payments to Goldberg for postconviction investigation; Exhibit B—Statement by Goldberg to ARDC regarding Petitioner's complaint; Exhibit C—Letter by Petitioner to ARDC in response to Goldberg Statement; Exhibit D—Denial of Petitioner's Motion for Extension of time to file Post-Conviction Petition.

of Petitioner's files for "possible Post Conviction relief." (Dkt. 3, Ex. B.) From that point on, Goldberg says that he had "numerous three way conversations" with Gross and Petitioner regarding the possibility of filing a petition on behalf of Petitioner. *Id.*

In June 2012, Goldberg received the final payment from Gross for his investigation. At that point, Goldberg stated the following on a receipt for this payment:

> Toby Gross has paid $2500 to Herb Goldberg as final portion due for Atkins Post Conviction Investigation. The issue found to exist is the validity of Mr. Atkins statements. If it can be established that said confession was coerced by police then a post-conviction petition will be filed on his behalf. The only costs due would be the costs of transcripts, investigators, filing fees.

(Dkt. 3, Ex. A.) Sometime after this payment, Goldberg states that he told Petitioner and his family that the only viable issues he could find were related to the validity of Petitioner's confession, and that "the petition would be predicated upon his 'actual innocence.'" *Id.* Goldberg then states that he informed Petitioner and his family that he would only be filing a petition of actual innocence.[3]

C. *Postconviction proceedings*

On October 9, 2015, Petitioner filed a pro se postconviction petition before the Cook County Circuit Court. (Dkt. 19, Ex. M.) The court denied the petition on January 6, 2016, which was affirmed by the appellate court on appeal on April 27, 2018. (Dkt. 11.) On June 13, 2016, Petitioner filed a petition for actual innocence in the Cook County Circuit Court.[4] On May 29, 2018, Petitioner filed a PLA of the appellate court's decision, which was denied by the Supreme Court on September 26,

---

[3] Petitioner does not include any more details or documentation regarding the outcome of the ARDC investigation. A review of the ARDC database showed no public record of discipline and pending proceedings for Goldberg. *See* "Herbert Louis Goldberg," ARDC of the Supreme Court of Illinois, https://www.iardc.org/Lawyer/Search (last visited Nov. 18, 2024).
[4] As of January 18, 2024, this petition is still pending before the circuit court. (Dkt. 57.)

4

2018. Petitioner then filed the present habeas petition before the Court on November 14, 2018, which was entered on the docket on January 15, 2019, after Petitioner paid the filing fee.

The Court now turns to this petition.

**Discussion**

*A. Timeliness of Petitioner's petition*

As a threshold matter, Petitioner concedes that his § 2254 petition is untimely. The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 110 Stat. 1214, sets a 1-year statute of limitations for seeking federal habeas corpus relief from a state-court judgment. *Lawrence v. Florida*, 549 U.S. 327, 331, 127 S. Ct. 1079, 166 L. Ed. 2d 924 (2007); 28 U.S.C. § 2244(d)(1). This limitations period is tolled while a state prisoner seeks postconviction relief in state court. In cases such as the present case where the petitioner was not impeded from filing an application by unconstitutional State action, § 2244(d)(1)(B), and the petitioner is not basing his petition on a right newly recognized by the Supreme Court, § 2244(d)(1)(C), or the discovery of new evidence, § 2244(d)(1)(D), the limitations period begins on the date on which the judgment became final by "the conclusion of direct review or the expiration of the time for seeking such review." § 2244(d)(1)(A). The Supreme Court has construed this statutory language as meaning that direct review concludes when the availability of direct appeal to the state courts and to the Supreme Court has been exhausted. *Jimenez v. Quarterman*, 555 U.S. 113, 119, 129 S. Ct. 681, 172 L. Ed. 2d 475 (2009).

Here, the Illinois appellate court affirmed Petitioner's conviction on October 11, 2011, (Dkt. 19, Ex. A.), and the Illinois Supreme Court denied his PLA on January 25, 2012. (Dkt. 19, Ex. F.) Supreme Court Rule 13 provides that a petition for a writ of certiorari seeking review of a judgment of a state court must be filed within 90 days of entry of judgment to be timely. Sup. Ct. R. 13. As such, Petitioner's judgment became final on April 24, 2012, and his petition for postconviction relief

was therefore due one year later by April 24, 2013. Because Petitioner filed his petition for postconviction relief on October 9, 2015, and the instant § 2254 petition on November 14, 2018, his petition is indeed untimely.

    B. *Applicability of equitable tolling*

Even though his petition is untimely, Petitioner argues that equitable tolling of the statute of limitations should be applied to his petition because his prior counsel—Goldberg—failed to file the necessary postconviction motions in state court. (Dkt. 32; Dkt. 57.) Equitable tolling is "an exceptional remedy" available to a habeas petitioner who shows: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Taylor v. Michael*, 724 F.3d 806, 810 (2013) (quoting *Holland v. Florida*, 560 U.S. 631, 649, 130 S. Ct. 2549, 177 L. Ed. 2d 130 (2010). Petitioners bear the burden of proving that they qualify for equitable tolling. *Ray v. Clements*, 700 F.3d 993, 1007 (7th Cir. 2012); *see also Pace v. DiGuglielmo*, 544 U.S. 408, 418, 125 S. Ct. 1807, 161 L. Ed. 2d 669 (2005).

Petitioner argues that his case meets both prongs of the test set forth in *Holland*. As to the first prong, Petitioner argues that he was under the impression that Goldberg had filed the necessary postconviction motions in state court, and that it was "not until recently" that he learned that Goldberg did not file these motions. (Dkt. 57.) Once he learned that his postconviction motions had not been filed, Petitioner states that he "acted diligently, and to the best of his ability, researched and prepared the necessary state court filings followed by the petition in this case." (*Id.*) As to the second prong, Petitioner argues that his "abandonment by counsel," his limited education, and his limited access to the prison law library combine to present extraordinary circumstances that prevented him from timely filing his petition and therefore warrant equitable tolling. (Dkt. 57.)

The Supreme Court's opinion in *Holland* sets a high bar that petitioners must meet to show that they diligently pursued their rights in the face of extraordinary circumstances in the habeas

6

context. *Taylor*, 724 F.3d at 810. There, Holland, an inmate on death row, repeatedly sought assurance from his attorney that his claims would be preserved for federal habeas review and that the statutory deadlines for his filings would be met, to which his attorney would respond in an irregular and delayed manner. *Id.* at 810–11. When Holland learned that the state supreme court had denied his postconviction petition for relief and that his AEDPA time limit had expired twelve days later, Holland immediately wrote his own pro se federal habeas petition using the prison library and mailed it to the district court just five weeks later. *Id.* at 811. Supported by extensive records of his attempts at communicating with his attorney, the Supreme Court ultimately found that Holland's actions satisfied the due diligence requirement for equitable tolling, "emphasizing that 'reasonable diligence' rather than 'maximum feasible diligence' was the standard." *Id.* (quoting *Holland*, 560 U.S. at 653).

Petitioner's argument that he acted diligently to file his postconviction petitions both fail to meet the standard set forth by *Holland* and are contradicted by his filings in support of his petition. Contrary to his statement that he did not learn until recently that his postconviction motions had not been filed, both Petitioner and Goldberg state that on or around October 23, 2012, Petitioner and his family were aware that Goldberg was not going to file a postconviction petition and instead was going to file a petition for actual innocence. At that point, Petitioner had just over 180 days to file his already drafted pro se postconviction motion or to arrange with another attorney to file his petition on his behalf. But Petitioner did not file his postconviction petition until October 9, 2015—approximately three years after learning that Goldberg would not be filing one on his behalf. Instead, Petitioner filed and pursued an ARDC complaint against Goldberg for his alleged failure to file his postconviction petition.

Whether Petitioner "misunderstood his attorney's advice, or his attorney gave him bad advice," *Taylor*, 724 F.3d at 811, Petitioner still waited three years to file his postconviction motion. This delay cannot support a finding of reasonable diligence, nor does it show that "extraordinary

7

circumstances" prevented Petitioner from filing. *See Griffith v. Rednour*, 614 F.3d 328, 331 (7th Cir. 2010) ("It may be negligent to wait until what is by a lawyer's own calculation the last possible day, because such a calculation could be wrong. But this kind of negligence is not 'extraordinary' by any means. Such a blunder does not extend the time for filing a collateral attack.").

"When an inmate, despite roadblocks thrown in his way, has reasonable time remaining to file a habeas petition in a timely manner, the circumstances cannot, as a definitional matter, be said to have prevented timely filing, as the standard requires." *Taylor*, 724 F.3d at 812. Because Petitioner failed to show that he acted diligently to file his postconviction petition and that extraordinary circumstances prevented him from timely filing this petition, equitable tolling is inapplicable and his petition is therefore untimely.

**Conclusion**

Because Petitioner's habeas petition is untimely and equitable tolling is inapplicable, Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 is dismissed as untimely [11]. The Court declines to issue a certificate of appealability under Rule 11 of the Rules Governing Section 2254 cases in the United States District Courts because there is no substantial showing of a denial of a constitutional right in this case. *See Davis v. Borgen*, 349 F.3d 1027, 1028 (7th Cir. 2003) (setting forth requirements for a certificate of appealability). Petitioner may request a certificate of appealability from the Seventh Circuit Court of Appeals. The Clerk is instructed to: (1) terminate Respondent Lashbrook; (2) add Petitioner's present custodian, Anthony Wills, Warden, Menard Correctional Center, and (3) alter the case caption to *Atkins v. Wills*.

**IT IS SO ORDERED.**

Date: 11/18/2024

Entered: _____
SHARON JOHNSON COLEMAN
United States District Judge

8